[Crim. No. 35842. Second Dist., Div. Four. May 11, 1970.]

STEVE C. GUEVARA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Max Solomon and Fred Kilbride for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**KINGSLEY, J.**—This is a petition, brought under subdivision (i) of section 1538.5 of the Penal Code, to review an order of the superior court denying a motion, made under subdivision (a) of that section, to suppress certain evidence. We conclude that the motion was properly denied and deny the writ of mandate sought by petitioner.

Police officers were told by an informant (not claimed to be a "reliable" or "tested" informant) that defendant—known to the informant as "Casey" —was engaged in large scale dealings in heroin. They arranged with the informant to purchase an ounce of heroin from defendant.[1] After that transaction, defendant departed for his home and the informant returned to the police officers, gave them a condom of heroin that he claimed he had received from defendant, told them of his conversations with defendant, including the information that defendant had gone home to await the arrival of some potential buyers from San Francisco.

The officers then proceeded to defendant's home and, after seeking and being granted admission,[2] arrested him in the living room of the house. After the arrest, one officer went into the kitchen, where he observed a large quantity of heroin, together with other supplies and equipment commonly used to package heroin for sale. A search of the house for other occupants was unavailing, although a woman and (possibly) a man were arrested as they came to the house.[3]

After a preliminary hearing, defendant was held to answer on a charge of possession of heroin for sale, in violation of section 11500.5 of the Health and Safety Code. His motion under section 1538.5 followed[4] and was denied.

### I

Pointing to some *lacunae* in the observation of the informant during his contact with defendant,[5] it is here contended that the original arrest

---

[1]The record discloses an elaborate scheme for contact between the informant and defendant. In view of our determinations herein, it is not necessary to set forth the procedure.

[2]The record shows that entry into the house was lawfully made; petitioner does not contend otherwise.

[3]The charges against these two persons were dismissed at the preliminary examination for lack of evidence to connect them with defendant or his operations.

[4]The motion was submitted on the transcript of the preliminary examination and on brief additional testimony from one of the arresting officers.

[5]It was stipulated that the informant had been searched before his first contact with defendant. Although they were under observation thereafter, no one saw an actual transfer of the condom from defendant to the informant.

was unlawful. The point is not open in this proceeding. It is clear that the only point as to the legality of the arrest that was made, either at the preliminary hearing or at the 1538.5 motion, was based on the time and place of the arrest (a matter that we consider below) and that the right to arrest at all was never questioned. As we said in *Mesaris* v. *Superior Court* (1970) 4 Cal.App.3d 976, 978 [85 Cal.Rptr. 124]: ". . . we cannot pass on contentions made here unless they were urged in the trial court and were there determined."

## II

Petitioner contends that his arrest was deliberately delayed until he had returned home, solely in order that, by arresting him there, a search of his home might be made as "incident" to the arrest. The point was argued both at the preliminary hearing and at the 1538.5 motion. Both judges expressly held that the delay was based on other and legitimate reasons and was not a subterfuge to permit an otherwise unlawful search.[6] There is ample evidence in the record to support that factual finding;[7] we are bound by it here.

It follows that, insofar as the motion to suppress was directed to the heroin turned over to the police by the informant, the motion was properly denied.

## III

The major problem concerns the evidence secured by the visit to the kitchen. We conclude that the officer was legitimately in the kitchen and that what he saw there, in open sight, was evidence lawfully obtained.

(a) Since the events herein involved took place over a month after the decision in *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the People concede that the visit to the kitchen cannot be sustained as "incident" to the arrest of defendant in his living room.

(b) Although the officer testified that, while in the living room, he smelled heroin and concluded that the odor came from the kitchen, the visit to the

---

[6]The committing magistrate said: "Now, therefore, it would appear to me that it is logical to deduce from the evidence that the arrest of Guevara at his apartment was not as a subterfuge to search the apartment, but that's where they went to get him because that's where they knew he had gone."

The superior court judge said: "I don't think this is a *Chimel* case. I think that under a given set of circumstances one certainly can make the finding that the arrest was purposely delayed so that there could be a search. *I don't find the facts to be such in this case.*" (Italics added.)

[7]The record shows that defendant had driven off in his automobile during the time that the informant was returning to the police officers and making his report to them.

kitchen cannot be sustained on that ground. (*People* v. *Marshall* (1968) 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665].)

(c) The People argue here that the officer was entitled to enter the kitchen in order to assure himself that he would not be attacked by someone hiding there. Assuming that a reasonable fear for his personal safety might justify a search of premises not otherwise open to search, there is nothing in the record before us to suggest that the officer herein involved entertained any such fear, or that he entered the kitchen for that purpose. The contention, on this record, is no more than the ingenious imagination of counsel for the People.

(d) However, we conclude that the officer had a right to enter the kitchen to look for possible confederates of defendant. The informant had told the officers that defendant was living with a woman, that other persons frequented the apartment, and that a buyer from San Francisco was expected momentarily—in fact that a defendant had gone home to meet that buyer. Even if the sale by defendant to the informant was not sufficient corroboration to make him thereafter a "reliable" informant, it is clear that the officers had information as to other persons which it was their right, and their duty, to follow up. Having arrested defendant, it was not unreasonable for them to walk through the house to see if others were there and, if found, at least to interrogate them. To walk through an open doorway,[8] in pursuit of such an investigation, is not the kind of excessive invasion of privacy that *Chimel* is designed to prevent; it is merely basic police investigation of information received.

Admittedly, if the officer lawfully entered the kitchen, his observations thereafter were not a "search" prohibited by any rule of law.

The petition for a peremptory writ of mandate is denied.

Files, P. J., and Jefferson, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied July 16, 1970. Schauer, J.,* participated therein. Peters, J., and Sullivan, J., were of the opinion that the petition should be granted.

---

[8]The record indicates that the two rooms were connected by a doorway, but that there was no door.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.