[Crim. No. 15575. In Bank. Dec. 7, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
FRANK MICHAEL BLOCK, Defendant and Respondent.

**COUNSEL**

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, Joseph P. Busch, Jr., District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

Howard E. Lowe and Dennis Shapiro for Defendant and Respondent.

**OPINION**

BURKE, J.—Defendant was charged by information with felonious possession of marijuana (Health & Saf. Code, § 11530) and with being in a place where narcotics are smoked or used, a misdemeanor (Health & Saf. Code, § 11556). Defendant's motion to set aside the information pursuant to Penal Code section 995 was granted by the superior court on the theory that the evidence against defendant on the felony charge was obtained during an improper warrantless search of defendant's house conducted for the purpose of determining whether additional participants in the felony were on the premises. The People herein appeal from the order of dismissal. (Pen. Code, § 1238, subd. 1.) We have concluded that under the particular circumstances of this case, the search for additional suspects was proper, and that accordingly the order of dismissal must be reversed.

The following facts were adduced at the preliminary examination: At

10:30 p.m. on the night of March 14, 1970, Officers Galloway and Marco were notified by police radio that there was a possible narcotics suspect at a specified address. The officers proceeded to that address and knocked on the door. Defendant opened the door and the officers immediately detected the odor of burning marijuana emanating from within. The officers identified themselves and told defendant that they had received a call regarding a possible narcotics suspect or narcotics party. Defendant admitted that he lived in the house. After a lapse of 30 seconds or so, the officers entered the house and observed a smoking marijuana roach in a metal clip on a coffee table in the living room, along with two pipes, one of which was warm and appeared to contain marijuana. The officers thereupon arrested defendant and three other persons found in the living room. Officer Marco went into an adjacent dining area and arrested two other persons.[1]

Marco observed that at least four of the six suspects had dilated eyes and pupils and an odor of marijuana upon their breath. The suspects were left in Marco's custody while Galloway went upstairs "to see if there were any other people in the house." Galloway testified before the committing magistrate that "because of the number of defendants in the house, I believed there was a possibility of more defendants" upstairs. The house was "quite large," containing three or possibly four bedrooms. Lights were turned on to illuminate the stairs leading to the second floor and the upstairs hallway. On the second floor, Galloway looked in one bedroom, a bathroom, and then a second bedroom. The light in the second bedroom was off and the door partially open. Galloway turned on the light, looked behind the door to see if anyone was hiding there, and then surveyed the room. He then observed a clear plastic vial lying in plain sight on the table and containing what appeared to be marijuana. He also saw an open jewelry box and, looking into it, discovered pieces of tin foil, a plastic bag, and a match box. He opened these items and found more marijuana.

Defendant contends that the marijuana found upstairs[2] was the product of a search which exceeded in scope the permissible limits set forth in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. On the other hand, the People argue that since Officer Galloway was not conducting a search for contraband but instead was looking for additional nar-

---

[1]Although the officers later testified that there were *seven* suspects, their earlier testimony fails to account for the seventh suspect.

[2]Since the magistrate dismissed the possession charges against all codefendants except Block, on the ground that the quantities of marijuana found downstairs were de minimus (*People* v. *Leal,* 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665]), we may assume that Block was committed solely on the basis of the marijuana found upstairs in his house.

cotics suspects, *Chimel* is inapplicable and Galloway was entitled to seize contraband lying in plain sight and discovered during the course of his investigation. ■ We agree that *Chimel* does not preclude the seizure of evidence found in plain sight during the course of a lawful investigation. Moreover, although we question the propriety of conducting in every case a general exploratory search for "possible suspects," nevertheless the instant search was justified under the particular facts and circumstances appearing to the arresting officers herein.

In *Chimel,* the police arrested defendant in his home for burglary and, incident to the arrest, conducted a warrantless search of his home, attic, garage and workshop, gathering numerous items of evidence. The court found "ample justification . . . for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. [Par.] There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." (395 U.S. at p. 763 [23 L.Ed.2d at p. 694].)

It is clear, therefore, that had Officer Galloway been conducting an evidentiary search of defendant's residence, that search would have exceeded the limits prescribed in *Chimel,* for the upstairs area of the house certainly lay beyond the area within the immediate control of the persons arrested in the living and dining rooms. ■ However, one of the "well-recognized exceptions" referred to in *Chimel,* is the rule that "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. [Citations.]" (*Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; see *Coolidge* v. *New Hampshire,* 403 U.S. 443, 465-466 [29 L.Ed.2d 564, 582-583, 91 S.Ct. 2022]; *Mozzetti* v. *Superior Court,* 4 Cal.3d 699, 707 [94 Cal.Rptr. 412, 484 P.2d 84]; *People* v. *Bradley,* 1 Cal.3d 80, 85 [81 Cal.Rptr. 457, 460 P.2d 129].)

■ A corollary of the "plain sight" rule, and one which is pertinent to the instant case, is that "During a lawful search of premises for persons believed to be in hiding, police officers may seize contraband evidence 'in plain sight.' [Citations.] Under such circumstances there is, in fact, no search for evidence. [Citations.]" (*People* v. *Marshall,* 69 Cal.2d 51, 56 [69 Cal.Rptr. 585, 442 P.2d 665]; see *People* v. *Gilbert,* 63 Cal.2d 690, 707 [47 Cal.Rptr. 909, 408 P.2d 365] [revd. on other grounds]; *People* v. *Roberts,* 47 Cal.2d 374, 378-379 [303 P.2d 721].) Although the foregoing

cases were decided prior to the *Chimel* decision, nothing in *Chimel* casts doubt upon their continued vitality.[3] ·The question remains, however, whether or not the instant search was indeed "a lawful search" for additional suspects.

██ As a general rule, the reasonableness of an officer's conduct is dependent upon the existence of facts available to him at the moment of the search or seizure which would warrant a man of reasonable caution in the belief that the action taken was appropriate. (*Terry* v. *Ohio,* 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868], involving police "stop and frisk" procedures.) ██ And in determining whether the officer acted reasonably, due weight must be given not to his unparticularized suspicions or "hunches," but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience; in other words, he must be able to point to specific and articulable facts from which he concluded that his action was necessary. (*Id.,* at pp. 21-22, 27 [20 L.Ed.2d at pp. 905-906, 909]; *Sibron* v. *New York,* 392 U.S. 40, 63-64 [20 L.Ed.2d 917, 934-935, 88 S.Ct. 1889]; *Remers* v. *Superior Court,* 2 Cal.3d 659, 664 [87 Cal.Rptr. 202, 470 P.2d 11] [probable cause to arrest]; *Cunha* v. *Superior Court,* 2 Cal.3d 352, 355-356 [85 Cal.Rptr. 160, 466 P.2d 704] [cause to detain, "pat down," and arrest]; *People* v. *Collins,* 1 Cal.3d 658, 662-663 [83 Cal.Rptr. 179, 463 P.2d 403] ["pat down" search].)

The rationale underlying the foregoing rule is concisely set forth in *Terry* v. *Ohio, supra,* 392 U.S. 1, 21-22, as follows: "The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. [Fn. omitted.] And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? [Citations.] Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. [Citations.]" (See *People* v. *Collins, supra,* 1 Cal.3d 658, 663.)

---

[3]In *Chimel,* the arresting officers had no reason to believe that additional suspects might be present in the house; the officers went there to arrest Chimel for a past burglary and their sole purpose for searching the house was to gather incriminating evidence against him. Thus, the court in *Chimel* had no occasion to consider the propriety of a search for additional suspects reasonably believed to be on the premises.

■ In the instant case, it seems evident that Officer Galloway had reasonable cause to believe, based upon facts available to him at the time he acted, that additional persons might be on the premises. The presence of six or seven persons downstairs, four of whom bore signs of recent marijuana use, together with the immediate detection of burning marijuana smoke and the discovery of a smoking marijuana roach and two pipes lying in plain sight on a coffee table reasonably indicated that a "pot party" was in progress, involving an undetermined number of participants. The lights which illuminated the stairway and upstairs hall justified the further suspicion that other persons might be upstairs who were involved in the offenses charged,[4] or who might pose a security risk for the arresting officers. Under these circumstances, it was entirely reasonable for Officer Galloway to act as he did.

Galloway testified that "because of the number of defendants in the house, I believed there was a possibility of more defendants," and the committing magistrate, in finding probable cause to commit defendant for felonious possession, accepted the testimony as true.[5] ■ "It is axiomatic that in considering the propriety of a motion to set aside an information pursuant to section 995 of the Penal Code, the reviewing court may not substitute its judgment as to the weight of the evidence for that of the committing magistrate. And if there is some evidence in support of the information, the court will not inquire into the sufficiency thereof." (*Perry* v. *Superior Court,* 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529].) ■ Moreover, " 'The credibility of witnesses at the preliminary examination, of course, is a question of fact within the province of the committing magistrate to determine, and neither the superior court nor an appellate court may substitute its judgment as to such question for that of the magistrate.' " (*Jones* v. *Superior Court,* 4 Cal.3d 660, 667 [94 Cal.Rptr. 289, 483 P.2d 1241].)

■ Our analysis of this matter is supported by *Guevara* v. *Superior Court,* 7 Cal.App.3d 531 [86 Cal.Rptr. 657], which upheld the seizure of contraband found during a similar house search for suspects. In *Guevara,*

[4]Such persons could have been reasonably suspected of either felonious possession (Health & Saf. Code, § 11530) or the misdemeanor offense of knowingly being in a place where narcotics are smoked or used (Health & Saf. Code, § 11556).

[5]The magistrate stated that "The testimony of the officer who went upstairs to the other rooms was that he did so for the purpose of seeing if there were any other suspects in the place. I think that that was a proper purpose, and was not an unlawful search . . . ." By implication, the magistrate must have determined that Galloway's stated purpose for the search was the true and only purpose therefor. Thus, there is no basis for holding that the instant search for suspects was a mere pretext for a search for contraband and consequently improper under the principles set forth in *Terry* v. *Ohio, supra,* 392 U.S. 1, 17-19 [20 L.Ed.2d 889, 903-905], and *People* v. *Superior Court (Kiefer)* 3 Cal.3d 807, 813-814 [91 Cal.Rptr. 729, 478 P.2d 449].

the officers arrested defendant in his living room for selling heroin; one of the officers subsequently went into the kitchen and observed additional contraband. The court acknowledged that *Chimel* would invalidate a search for contraband under these circumstances, but upheld the search on the basis that the officer "had a right to enter the kitchen to look for possible confederates of defendant." (P. 535.) The officer's investigation was based upon "information as to other persons which it was their right, and their duty, to follow up," including an informant's statement that defendant was living with a woman, that other persons frequented the apartment, and that a buyer was expected momentarily. (P. 535.)

We conclude that since Officer Galloway believed in good faith that additional participants in a felony might be on the premises, and since that belief was a reasonable one, based upon facts from which he could reasonably infer the presence of such additional suspects, the search he conducted was a lawful one and authorized the seizure of the contraband found in plain sight during the course of that search.

The order dismissing the information pursuant to Penal Code section 995 is reversed.

Wright, C. J., McComb, J., Mosk, J., and Sullivan, J., concurred.

**PETERS, J.**—I dissent.

The majority's conclusion that there was probable cause to believe that there were other suspects on the second floor of the house is in conflict with the principles of *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].

I agree with the majority in their statement of the basic general rules applicable to the instant facts but find that the majority have incorrectly applied them to these facts. To apply these rules as the majority have done would make them mere empty words, and I can imagine no case where the officers who have made an arrest in one room of a house would be prohibited from searching the rest of the house for other possible suspects.

The scope of an allowable search of an arrestee's home was determined in *Chimel* v. *California, supra,* 395 U.S. 752. The court held that the police can search the arrestee's person and area "within his control," i.e., the area from which he might gain possession of a weapon or destructible evidence. The court recognized that, *"there is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs*—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." (*Chimel* v. *California, supra,* 395 U.S. at p. 763 [23 L.Ed.2d at p. 694].) (Italics added.)

I agree with the majority that where officers arrest suspects in one part of the house, there must be "specific, articulable" facts supporting a reasonable belief that others are present before the officers may undertake a search of other rooms in the house for additional suspects. The crucial inquiry is whether there were sufficient "specific, articulable" facts giving the officers probable cause to believe that there were other suspects in the upstairs of the house.

The majority state that "the reasonableness of an officer's conduct is dependent upon the existence of facts available to him at the moment of the search or seizure which would warrant a man of reasonable caution in the belief that the action taken was appropriate. . . . [D]ue weight must be given not to his unparticularized suspicions or 'hunches,' but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience; in other words, *he must be able to point to specific facts from which he concluded that his action was necessary.*" (Italics added.) In reasoning that more than good faith is necessary to search for additional suspects, the majority recognize that an objective standard must be used in judging the facts. Thus it follows that hunches and mere suspicions are not part of the objective test. "And simple ' "good faith on the part of the arresting officer is not enough." . . .' " (*Terry* v. *Ohio,* 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868]; see *People* v. *Collins,* 1 Cal. 3d 658, 663 [83 Cal.Rptr. 179, 463 P.2d 403].)

Neither officer was able to point to any specific facts justifying his suspicion that other narcotics suspects might be present. There were six people downstairs in close proximity to a smoking "roach." The rooms upstairs were dark and quiet. The officer did not claim that he searched the upstairs bedrooms because he feared for his own safety; in fact, he specifically testified that his weapon was not drawn. Neither officer testified that he heard any noise upstairs, or that there were any lights coming from any of the upstairs rooms. In fact, the bedroom where the marijuana was found was darkened. Neither officer testified that there were any hurried movements by the six people when they entered the house which might have given rise

to the suspicion that someone had just left. Nor did the officers receive any information prior to arriving at the premises that anyone other than defendant Block would be in the house. Block was found in the living room prior to the search.

The sole basis suggested by the majority for the asserted reasonable belief that suspects might be upstairs was that the officers had found a "pot party" in progress downstairs. The superior court judge's rhetorical question succinctly answers the majority's point: "How could you possibly say that an officer has a right to wander around a house, looking for people, just because there are two people, or four people, smoking a roach?" The absence of any specific facts indicating the presence of additional suspects reduces Officer Galloway's suspicion to a mere hunch, insufficient to warrant a search under the foregoing authorities. To infer that because six people were found in the house others might be present is just as illogical as to infer that because only one person was found in the living room others should be around the house somewhere. As Justice Mosk stated in *Horack* v. *Superior Court* (3 Cal.3d 720, 727 [91 Cal.Rptr. 569, 478 P.2d 1]), "Only the wandering fancy of the police officer, and not a reasonable interpretation of the circumstances here, could explain such belief."[1]

I conclude that the mere fact that the officers found a "pot party" downstairs does not, without additional facts, furnish probable cause to believe that further participants were upstairs. The reasoning of the majority in reaching a contrary result means that *a search for additional "possible suspects" could be undertaken in every case where more than one suspect who may be engaged in criminal conduct is arrested.* The rule announced today allows the police to search throughout a house for other suspects pursuant to an arrest of two or more in a variety of situations involving a myriad of crimes where an officer could surmise that there may be more than one person involved in the crime. To permit such searches would totally emasculate *Chimel* and allow the police to search any areas except places like desk drawers which are so small that even a midget could not hide in one.

There is, of course, always the possibility that some additional unknown person may be found in a large or multi-story building. But the mere possibility of additional persons in other parts of the house, without more, is not enough to provide probable cause to search the entire premises for addi-

---

[1]It is exceedingly doubtful that anyone in these bedrooms could be successfully prosecuted for knowingly being in a place where marijuana was being smoked, inasmuch as they would have been far removed from the vicinity of the living room, behind a closed door, and therefore could not reasonably be assumed to be knowledgeable of the activity going on downstairs. Moreover, Health and Safety Code section 11556 makes it illegal to be in a "room" where marijuana is being smoked, not just in the same house.

tional persons once all of the suspects have been arrested. It bears emphasizing that in *Chimel* the court stated there is no justification "for routinely searching any room other than that in which an arrest occurs . . . ." (*Chimel* v. *California, supra,* 395 U.S. at p. 763.)

By holding that the mere possibility that there might be an additional unknown person in the house warrants a search of the entire premises the majority have rendered the above rule meaningless.

In sum, the only person the officers were seeking when they came to the premises they found downstairs. Before arriving on the premises they had no reason to suspect that any additional suspects would be there. After arriving they had no reasonable cause to believe that anyone was on the premises other than those found downstairs. To uphold the search of the upstairs in the instant case leaves the *Chimel* rule as mere empty words.

The majority purport to rely on *Guevara* v. *Superior Court,* 7 Cal. App.3d 531 [86 Cal.Rptr. 657]. *Guevara,* however, is a case where the arresting officers had information warranting a reasonable belief that a confederate of the person arrested was in the house, and the case furnishes no support for today's decision.

In *Guevara,* police officers were told by an informant that the defendant was engaged in large-scale dealings in heroin. They arranged with the informant to purchase an ounce of heroin from the defendant. After that transaction, the defendant departed for his home. The informant returned to the police officers, gave them a condom of heroin that he claimed he had received from the defendant, and informed them that the defendant had gone home to await the arrival of some potential buyers from San Francisco. The informant also had told the officers that the defendant was living with a woman, that other persons frequented the apartment, and that the buyer from San Francisco was expected momentarily, in fact, that the defendant had gone home to meet the buyer. The officers then proceeded to the defendant's home and, after seeking and being granted admission, arrested him in the living room of the house. The officer walked through an open entry way, adjacent to the living room, into the kitchen, looking for confederates of the defendant. In the kitchen, the officer saw heroin in plain view. This evidence was held admissible as the officers had factual information that others such as the woman, or buyers might be present.

*Guevara* stands for the proposition that when officers are informed that there are confederates of an arrestee, who are probably on the premises, they may walk into the room adjacent to where the arrestee is arrested and look for these confederates and any contraband found in plain view is admissible. However, unlike the instant case, the officers in *Guevara* were

able to point to specific and articulable facts from which they concluded that other suspects might be present in the house. The case at bar does not present such a fact pattern.

In the instant case, the accused has made a *prima facie* showing that the search and seizure were illegal, establishing that they were made without a warrant; the burden thereafter rests with the prosecution to show proper justification. (*People* v. *Haven,* 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927].) I believe that the People have not met this burden, and that the decision of the superior court holding the search of the upstairs bedroom illegal must be upheld.

The order dismissing the information pursuant to Penal Code section 995 should be affirmed.

Tobriner, J., concurred.