[Crim. No. 13420. Fourth Dist., Div. One. Dec. 15, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH CODINHA, Defendant and Appellant.

COUNSEL

John Y. Tremblatt, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Robert M. Foster and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STANIFORTH, J.**—After unsuccessful motions to suppress evidence and traverse search warrant (Pen. Code, § 1538.5), defendant Joseph Codinha pleaded guilty to possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a)), a lesser included offense to the charge contained in the information (Health & Saf. Code, § 11378). Codinha was placed on three years' probation conditioned upon service of 110 days in jail.

FACTS

San Diego police officer William M. Graham had arrest warrants for Frank Wayne (traffic offense), Douglas Elmo Cannon (narcotic offense) and David Bisese (traffic offense) at 5210 Quince Street, San Diego. Graham received information from a neighbor (Shanberger) that a gold Cadillac registered to Bisese was often parked in front of this address. The neighbor also said a three-wheel motorcycle found to be registered to Frank Wayne was commonly parked in the garage. She had seen the vehicle there on the previous weekend (four days before). Four months earlier another car was seen on at least two occasions at the residence, believed to be a car driven by Cannon.[1] The neighbor told the officer Codinha was the "principal" resident and another individual named David was an occupant of the house. The informant thought the latter person was referred to as "Joelson."

None of the vehicles were to be seen around the premises when on the morning (9 a.m.) of November 12, 1980, the officers approached the Codinha house, knocked on the door and announced they were officers seeking to serve warrants of arrest and demanded entry. When Bisese answered the door, the officers asked for his name; he gave it and they entered the house and arrested him. The officers then asked Bisese who else was in the house. Bisese said there were other people in the bedroom but he did not know who they were. The officers did not ask Bisese if Wayne or Cannon were present; nor was permission to search the premises requested by or given to the officers. However, they commenced a search for the other prospective arrestees. They looked in the first bedroom; it was empty. The second bedroom was locked. The officers knocked several times on the locked bedroom door and announced they were

---

[1] The magistrate conceded the information as to Cannon was "a little bit stale."

police officers with a warrant of arrest to serve and demanded entry. They waited 30 seconds and on hearing no response forcibly opened the door. They saw Codinha standing beside the bed, pulling his pants up; Mary D. was in bed with no clothes on. The officers handcuffed Codinha, then asked and learned his name.

After taking Codinha into custody, the officers went to a third bedroom which was also locked. Rather than ask Codinha to unlock the door, the officers kicked it open and discovered the room was empty. However, on the desk in plain view they found a mirror on which were three lines of white powder, three small piles of powder and a razor blade. Based upon this observation and his experience, Graham was of the opinion the substance was cocaine. He requested Officers Claire and Ashcraft to come to the house to confirm his opinions. Graham departed for the district attorney's office to obtain a search warrant, leaving Sergeant Manis to secure the house.

Codinha asked Manis if he could get some money from several locations throughout the house and Manis agreed. Codinha, followed by Manis, went to look in a cash box located in what appeared to be Codinha's office or den. Inside it Manis saw three small plastic bags containing a white powder.

At the suppression hearing, Bisese testified the officers kicked open the front door and pushed him against the wall. Bisese denied knowing anyone else was in the residence; the Quince Street address was not his permanent residence.

DISCUSSION

I

██ There has been a distinct split of authorities among the several federal courts of appeal, as well as state courts, as to the sufficiency of an arrest warrant to authorize the entry and search of a third party's premises for an arrestee absent exigent circumstances or consent. (See 2 La Fave, Search and Seizure (West) § 6.1, p. 384, and cases cited; *Steagald* v. *United States* (1981) 451 U.S. 204, 207, fn. 3 [68 L.Ed.2d 38, 43, 101 S.Ct. 1642].) Two recent United States Supreme Court cases, *Steagald* v. *United States, supra,* and *Payton* v. *New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371] now have resolved the issue and compel the conclusion that the search for arrestees in Codinha's house was illegal.

In *Payton* v. *New York, supra,* 445 U.S. 573, the United States Supreme Court held: "The Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest."[2] and: "*[F]or Fourth Amendment purposes, an arrest*

---

[2]The Supreme Court of California had previously adopted this arrest warrant requirement in *People* v. *Ramey* (1976) 16 Cal.3d 263, 270-271 [127 Cal.Rptr. 629, 545 P.2d 1333], on the basis of both state and federal constitutional principles.

*warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."* (*Id.*, at p. 603 [63 L.Ed.2d at p. 661].)

The *Payton* court, however, expressly reserved judgment on "any question concerning the authority of the police, without either a search or arrest warrant, to enter *a third party's home to arrest a suspect."* (*Id.*, at p. 583 [63 L.Ed.2d at p. 649]; italics added.)

That issue has now been resolved by the United States Supreme Court in *Steagald* v. *United States, supra*, 451 U.S. 204, whose factual base closely resembles the events at the Codinha house. In *Steagald* police agents entered petitioner's home in order to execute a valid arrest warrant for a fugitive, Lyons. While searching for Lyons, whom the agents never found, they discovered a large amount of cocaine. Steagald was arrested and convicted. The Supreme Court held that in the absence of exigent circumstances, the government may enter the home of a third party to execute an arrest warrant only with consent of the third party, or with a valid search warrant. In *Steagald* the Supreme Court said: *"Thus, as we recently observed, '[I]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'* Payton v. New York, supra, 445 U.S. at 590, 100 S.Ct., at 1382. [Citations.] . . . Thus, the narrow issue before us is whether an arrest warrant—as opposed to a search warrant—is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances."* (*Id.*, 451 U.S. at p. 212 [68 L.Ed.2d at pp. 45-46, 101 S.Ct. at p. 1647]; italics added.) The court explained: "[T]he warrant embodied a judicial finding that there was probable cause to believe that Ricky Lyons had committed a felony, and the warrant therefore authorized the officers to seize Lyons. *However, the agents sought to do more than use the warrant to arrest Lyons in a public place or in his home; instead, they relied on the warrant as legal authority to enter the home of a third person based on their belief that Ricky Lyons might be a guest there. Regardless of how reasonable this belief might have been, it was never subjected to the detached scrutiny of a judicial officer. Thus, while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect petitioner's privacy interest in being free from an unreasonable invasion and search of his home. Instead, petitioner's only protection from an illegal entry and search was the agent's personal determination of probable cause. In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant."* (*Id.*, 451

U.S. at p. 213 [68 L.Ed.2d at p. 47, 101 S.Ct. at p. 1648]; italics added.) The Supreme Court pointed to the potential for abuse inherent if a contrary view was adopted. Armed solely with an arrest warrant for a single person, the police could search all the homes of the suspect's friends and acquaintances. The court further noted the arrest warrant could form a pretextual basis for indiscriminate searches where police merely entertained suspicions of illicit activity. (*Id.*, 451 U.S. at p. 216 [68 L.Ed.2d at p. 48, 101 S.Ct. at p. 1649].)

The Supreme Court concluded: "In sum, two distinct interests were implicated by the search at issue here—Ricky Lyons' interest in being free from an unreasonable seizure and petitioner's interest in being free from an unreasonable search of his home. Because the arrest warrant for Lyons addressed only the former interest, *the search of petitioner's home was no more reasonable from petitioner's perspective than it would have been if conducted in the absence of any warrant. Since warrantless searches of a home are impermissible absent consent or exigent circumstances, we conclude that the instant search violated the Fourth Amendment.*" (*Steagald,* 451 U.S. at p. 216 [68 L.Ed.2d at p. 48, 101 S.Ct. at p. 1649]; italics added.)

▮ The officers here did not in fact enter premises belonging to the person to be arrested. The officers knew Codinha, a party not named in the arrest warrant, was the "principal" resident of the Quince Street address. The officers did not check police records, ownership, etc. to determine who in fact was the lawful occupant. None of the vehicles identified as belonging to Bisese, Cannon or Wayne were present at the Quince Street residence when the officers arrived to serve the warrants. Shanberger's observation of the various parked vehicles pertained to past occasions. Her information connected Cannon and Wayne only remotely in time to an ambulatory *presence* at Codinha's home. There was *no* evidence that Cannon or Wayne *resided* at Codinha's home. Further, a Department of Motor Vehicles check previously conducted by the officers gave Wayne a *completely* different residence address. Wayne and Cannon were arrested two hours after the sweep through Codinha's house at that very address.

## II

The People rely improvidently on *People* v. *Block* (1971) 6 Cal.3d 239, 243-245 [103 Cal.Rptr. 281, 499 P.2d 961]. ▮ In *Block,* the California Supreme Court found that the police exploratory search of a house for possible suspects was justified under the particular facts appearing to the arresting officers. In *Block,* police officers responded to a call for a suspected "pot party." The officers arrested the defendant and three other persons in the living room, two other people were arrested in the adjacent dining area and an officer went upstairs to see if other suspects were in the bedrooms. The basis for the search for other suspects was the number of arrests which had been made, the amount of drug paraphernalia present, the size of the house,

the fact that it was a "party," and the second floor and upstairs hallway lights were on.

Concerning this "search" aspect of the *Block* decision, the California Supreme Court in a later decision, *Guidi* v. *Superior Court* (1973) 10 Cal.3d 1, 9 [109 Cal.Rptr. 684, 513 P.2d 908], warned: "We were aware in *Block* that suspect searches incident to arrest could potentially become a serious threat to Fourth Amendment freedoms as were the evidentiary searches incident to arrest condemned in *Chimel* [*Chimel* v. *California*, 395 U.S. 752.] Thus we questioned 'the propriety of conducting in every case a general exploratory search for "possible suspects". . . .' (*People* v. *Block, supra,* 6 Cal.3d at p. 243.)"

The entry and search rule of *Block* which authorized a nonwarranted officer to enter a suspect's dwelling to arrest a person must in the first instance be examined and questioned in light of *People* v. *Ramey, supra,* whose twin requirements of an arrest warrant and a "true emergency" or "where circumstances do not tolerate delay" are to be met before search of a suspect's residence is authorized. (*Ramey,* at p. 276.)

Secondly, insofar as *Block* would authorize either an officer with an arrest warrant or unwarranted officer's entry into a third party's home to arrest a suspect, it contravenes and is therefore by implication overruled by the *Steagald* holding that absent exigent circumstances the government may enter the home of a third party to arrest a suspect only with consent or with a valid search warrant.

The *Steagald* rule is based upon federal Constitution principles. *Steagald* delineates a minimum standard necessary to be met to satisfy the Fourth Amendment's proscription against unreasonable searches. Under the federal supremacy doctrine, such decision is binding on this court. (See *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467; *People* v. *Brisendine* (1975) 13 Cal.3d 528, 545 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *O'Roy* (1972) 29 Cal.App.3d 656, 662 [105 Cal.Rptr. 717]; *People* v. *Metzger* (1971) 22 Cal.App.3d 338, 342 [99 Cal.Rptr. 264]; *Masaoka* v. *People* (1952) 39 Cal.2d 883, 885 [245 P.2d 1062].) ▮ Under *Payton* and *Steagald* the search of Codinha's house without a warrant, without consent, without exigent circumstances was proscribed. ▮ To the extent that *People* v. *Block, supra,* is inconsistent with the principles enunciated in *Payton* and *Steagald,* it is not controlling.

## III

▮ Bisese was lawfully arrested by the warranted officer at the doorway of Codinha's house. The extent of any search permitted by the Fourth Amendment

as incident to this lawful arrest is circumscribed in scope by the principles articulated in *Chimel* v. *California* (1969) 395 U.S. 752, 757 [23 L.Ed.2d 685, 690, 89 S.Ct. 2034]. The police activities here far exceeded the permitted bounds of a *Chimel*-type search and offended Fourth Amendment standards. This was no arms-length search. The police searched the entire house. Cocaine discoveries were made in the course of this illegal search; the contraband discovered was the fruit of the poisonous tree (illegal search) and should be suppressed. (*Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407.] The search warrant was based upon observations made in the course of this illegal search for persons and therefore is invalid. The items discovered by use of such search warrant must also be suppressed.

Judgment reversed.

Brown (Gerald), P. J., and Wiener, J., concurred.