[Crim. No. 22988. Second Dist., Div. One. Dec. 20, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT W. AMICK, Defendant and Appellant.

## COUNSEL

Robert W. Amick, in pro. per., and Walter Krauss, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, William R. Pounders and Jack T. Kerry, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—Defendant and one Miracle were charged with two counts of burglary (§ 459, Pen. Code) and one count of receiving stolen property (§ 496, subd. 1, Pen. Code). The motion to suppress pursuant to section 1538.5, Penal Code, was denied except as to any statements made by defendant to officers after his arraignment. Thereafter defendant withdrew his plea of not guilty and entered a plea of guilty to second degree burglary (count I); counts II and III were dismissed. He appeals from the judgment.

Appellant claims the television set should have been suppressed as evidence on the ground that it was the product of an unlawful detention, arrest, search and seizure. Around 10:20 p.m. in the City of Santa Maria, Officer Kapphahn, in plain clothes and driving a black vehicle equipped with siren and red spotlight, received a radio report of a burglary at Vandenberg Inn and theft of a television set involving a dark colored stake-bed truck with two male occupants; within a half-hour he observed a dark stake-bed truck containing two men parked without lights in a closed service station; he drove past, then observed the truck, its lights out, pull out of the station behind him and not turn on its lights until it had gone a quarter of a block; his suspicions aroused, he turned onto a side street and turned around to follow the truck; approaching to within three car lengths of the truck he noticed several objects in plain sight on its bed—"a square box-type object" which "appeared to be the size and shape of a television set" covered by a blanket, and in open view three tires; the tires raised further suspicion because initially he had observed the truck with its lights out parked in a closed service station "just down from the tire rack" the front door of which was damaged and could not be secured, and at that time he thought it possible that these tires "could have come from the service station." The officer followed the truck onto the freeway, radioed for backup assistance and turned on his red spotlight and flashed

his lights signaling the truck to pull over but it did not, continuing for at least half a mile during which he observed movement within the cab and defendant (the passenger) turn around on "a couple of occasions" and look toward him. The truck finally exited the freeway, circled back on a surface street then pulled to the right and stopped; the officer stopped at the rear and opened his door; at the time he stepped out a black and white patrol unit drove up and parked across the street from the truck whereupon the truck accelerated and drove off. The black and white police car and Officer Kapphahn gave chase utilizing both red spotlight and siren; one-fourth of a mile later they stopped the truck in a service station area.

Officers approached the truck on the driver's side while Officer Kapphahn approached on the passenger side, and with gun drawn ordered Miracle (the driver) and defendant to get out; both men were given a pat-down. From outside, Officer Kapphahn looked into the cab for registration but found none; he then went around to the rear of the truck and standing on the pavement saw through the stakes and in plain sight on the open bed of the truck "several tires and the box-like object [he] had noticed earlier"; it was his "impression [the latter] was a television set"; he testified it was not a "hunch. I would say this was an opinion that I formed based on the information I had"; he then conducted a pat-down of the object from outside the truck without lifting the blanket; he felt a knob, and in his opinion the square object was a television set; both men were placed under arrest for receiving stolen property and resisting arrest, then taken to the station; the truck was towed to the station at the same time. A search of the truck with permission of Miracle and defendant revealed under the blanket a television set on top of which was stamped "DeVille Motel"; simultaneously other officers were taking a burglary report at the DeVille Motel in which a television set and blanket were reported missing.

Appellant contends that the stopping of the truck amounted to an illegal detention because the officer failed to articulate any unusual or suspicious circumstances; that even if the stop was lawful the subsequent pat-down of the square object through the blanket constituted an unlawful search because the stop could only be made for the purpose of interrogation and there was none; and that even if the pat-down was lawful his arrest was unlawful for lack of probable cause.

Inasmuch as the trial court, after holding an evidentiary hearing, has ruled on the motion to suppress, all factual conflicts must be resolved in a manner most favorable to the court's disposition of the motion. Initially Officer Kapphahn sought to stop the truck to investigate because he had a reasonable suspicion that it was carrying a recently stolen television set

and three tires stolen from a service station; his testimony points "to specific and articulable facts from which he concluded that his action was necessary. [Citations.]" (*People* v. *Block,* 6 Cal.3d 239, 244 [103 Cal. Rptr. 281, 499 P.2d 961].) The United States Supreme Court has recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest," and temporarily detain him therefor. (*Terry* v. *Ohio,* 392 U.S. 1, 22 [20 L.E.2d 889, 906-907, 88 S.Ct. 1868]; *Adams* v. *Williams,* 407 U.S. 143, 145-146 [32 L.Ed.2d 612, 616-617, 92 S.Ct. 1921]; *People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) However, "before such a detention may be undertaken there must be an objectively reasonable suspicion that something out of the ordinary has taken place, that the activity is related to a crime, and that defendant is connected to the activity. (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Henze,* 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545].)" (*People* v. *Griffith,* 19 Cal.App.3d 948, 950 [97 Cal.Rptr. 367]; *People* v. *Adam,* 1 Cal.App.3d 486, 489 [81 Cal.Rptr. 738].)

It is clearly apparent from the evidence that when the officer observed the truck with its lights out near a damaged tire rack late at night in a closed station then proceed onto the street with its lights still out he became suspicious; that his suspicion ripened into a "reasonable suspicion" when he approached the rear of the truck and observed the objects on its bed fully justifying the discharge of his investigative function; and that as the truck drove off upon arrival of the police unit and the pursuit of the truck continued, the "reasonable suspicion" that the tires had been stolen and the box-like object under the blanket was a stolen television set developed into probable cause. "Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Fein,* 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583]; *People* v. *Terry,* 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Ross,* 67 Cal.2d 64, 69-70 [60 Cal.Rptr. 254, 429 P.2d 606].) No exact formula exists for determining probable cause and each case must be decided on the facts and circumstances known to the officer at the time he was required to act. (*People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Ross,* 67 Cal.2d 64, 69-70 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Talley,* 65 Cal.2d 830, 839 [56 Cal.Rptr. 492, 423 P.2d 564].) "A mere hunch or a good faith belief on the part of the arresting officer is

not enough; he ' "must be able to point to specific and articulable facts which . . . reasonably warrant" ' his suspicion that an offense has been or is being committed. (*Cunha* v. *Superior Court* (1970) 2 Cal.3d 352, 356 [85 Cal.Rptr. 160, 466 P.2d 704].)" (*People* v. *Martin,* 9 Cal.3d 687, 692 [108 Cal.Rptr. 809, 511 P.2d 1161].)

▮ The totality of the circumstances confronting the officer supports not only a temporary detention—there was an "objectively reasonable suspicion" on the part of the officer that Miracle and defendant were involved in criminal behavior—but probable cause for their arrest. At the time the officer attempted to stop the truck the first time, he knew a burglary had occurred shortly before involving the theft of a television set and two men in a dark colored stake-bed truck; he saw such a truck containing two men, and in plain sight on the open bed through the stakes not only three tires under circumstances that led him to believe they might have been stolen from a service station but a square box-like object which appeared to be the size and shape of a television set covered by a blanket.[1] Instead of stopping when signaled to pull over, the truck continued for a half a mile during which the officer saw defendant several times glance back at him. We bear in mind that even though the officer activated his red light and headlights to stop the truck he was in plain clothes driving an unmarked black vehicle, and that Miracle and defendant may not have known he was an officer. For this reason we discount the "movements" of the two men in the cab and their failure to stop the first time. However, after the truck stopped and while the officer was getting out of his car a black and white patrol car arrived and stopped across the street from the truck whereupon the latter drove away. Officer Kapphahn had a right to and did assume that at that time Miracle and defendant knew law enforcement officers wanted to talk to them; and upon being pursued by the black and white unit and Officer Kapphahn with red spotlight and siren there could be little doubt that Miracle and defendant knew they were being pursued by officers although they failed to stop and continued for a quarter of a mile until they were forced to stop. Considering "the reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience . . . . [Citations.]" (*People* v. *Block,* 6 Cal.3d 239, 244 [103 Cal.Rptr. 281, 499 P.2d 961]), we can only conclude that he acted reasonably not, according to his testimony, on a "hunch" but on his "opinion . . . based on the information [he] had" that the box-like object was

---

[1]The presence of two men in a dark colored stake-bed truck carrying these items under the circumstances may be far more significant to an officer in a small community such as Santa Maria than in a city as large as Los Angeles.

a television set and it had been stolen and that the three tires were taken from the service station.

Miracle and defendant were ordered from the cab at gun point and given a pat-down for weapons both of which were proper. (*People* v. *Waters,* 30 Cal.App.3d 354, 360 [106 Cal.Rptr. 293], and cases cited therein.) The officer then walked to the rear of the truck and while standing on the pavement where he had a right to be (*Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]), there fell in plain sight a box-like object covered by a blanket which in his "opinion" was a television set, and three tires which he thought might be stolen; thus he reached between the stakes of the open bed and patted down the blanket covering the object feeling the knob; concluding under all of the circumstances that the object was a television set and that it was stolen he arrested defendants for receiving stolen property. While a box-like object covered by a blanket is not such that mere observation of it would lead one to a reasonable conclusion that it was a television set, its shape together with the fact that it was covered, on a truck containing two men shortly after a burglary in which a television set was stolen and adjacent to three tires the officer believed might have been stolen from a service station, and the flight of defendants when the black and white patrol unit came into view, supported the officer's opinion. The observation of the blanket-covered object and tires in plain sight does not constitute a search. (*Lorenzana* v. *Superior Court,* 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33].)

 Under the foregoing does the pat-down of the square object through the blanket amount to a "search?" If it does, the officer's action was justified at its inception and reasonably related in scope to the circumstances which justified the interference in the first place. Only by patting down the blanket could the officer confirm or discount his initial constitutionally reasonable conclusion that the object had evidentiary value (*Guidi* v. *Superior Court,* 10 Cal.3d 1, 10, 18-19 [109 Cal.Rptr. 684, 513 P.2d 908]) and make an adequate investigation. Moreover, if a search, it was of a most limited nature conducted with only minimal intrusion of privacy and restricted entirely to the object in question. Also any expectation by defendants of privacy as to the television set in plain sight even though a blanket was thrown over it on the open bed of a truck being driven around the public streets would have been unreasonable and no constitutionally protected right of privacy was violated when Officer Kapphahn looked through the stakes and touched the object. (*People* v. *Bradley,* 1 Cal.3d 80, 85 [81 Cal.Rptr. 457, 468 P.2d 129].)

In *People* v. *Laursen,* 8 Cal.3d 192 [104 Cal.Rptr. 425, 501 P.2d 1145],

after committing a robbery of a supermarket defendant and an accomplice commandeered an automobile and forced the driver to aid in their escape. Defendant sought to exclude evidence seized from a vehicle left at the scene and impounded. The court held the impounding and search of the vehicle were reasonable in that there was probable cause for the search at the scene. Said the court at page 201: "The case at bench does not fall within our proscription of unreasonable routine inventory searches as enunciated in *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84]. In that case we did not address ourselves to instances like the present in which there was probable cause to believe the searched vehicle either contained evidence of a crime or was an instrumentality of its commission. (*Id.* at p. 703.) In *People* v. *McKinnon* (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097] we made it clear that a search without a warrant of an automobile or another readily movable item, founded upon probable cause, may be justified because of its 'distinguishing characteristic of mobility' even though in otherwise similar circumstances a search of a fixed structure may be unreasonable within Fourth Amendment prohibitions. (*Id.* at p. 907.) Although in *McKinnon* we dealt with readily movable objects other than a vehicle, we relied on *Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975] involving the search without a warrant of an automobile on probable cause. *Chambers* and *McKinnon* establish the rule that when there is probable cause to believe that an automobile stopped on a highway contains contraband, evidence of a crime, or was itself an instrumentality of the commission of one, law enforcement officers need not obtain a warrant before conducting a search since there is no distinction of constitutional proportion between an immediate search on probable cause without a warrant and the automobile's immobilization until one is secured." Footnote 8 on page 201 sets out the factual situation: "In the instant case there was clearly probable cause to search the Mercury at the site of the robbery. A number of eyewitnesses to the crime saw the two suspects drive up to the market and later unsuccessfully attempt to leave in the same automobile and this information was reported to the investigating officers. Having connected the robbery with the Mercury on the basis of these reports the officers had reason to suspect that some evidence helpful in the apprehension of the culprits and investigation of the crime would be contained within." Officer Kapphahn had reasonable cause to believe the truck had been used in the burglary and the open bed of the truck contained the fruits of the crime. The officer was justified in making a limited search of the truck to determine the nature of the object under the blanket. (*Gallik* v. *Superior Court,* 5 Cal.3d 855, 861 [97 Cal.Rptr. 693, 489 P.2d 573]; *People* v. *Superior Court* [*Kiefer*], 3 Cal.3d 807, 812-813 [91 Cal.Rptr.

729, 478 P.2d 449, 45 A.L.R.3d 559].) Having felt the knob and reached the opinion the object was in fact a television set and that the three tires were stolen, there was probable cause to arrest Miracle and defendant. The arrest was made on events more consistent with criminal than with innocent activity (*People* v. *Martin,* 9 Cal.3d 687, 692 [108 Cal.Rptr. 809, 511 P.2d 1161]; *People* v. *Block,* 6 Cal.3d 239, 244 [103 Cal.Rptr. 281, 499 P.2d 961]) and was lawful.

■ Having probable cause to search the open bed of the truck at the time it was forced to stop, it was not unreasonable to transport it to the station to do so. (*Chambers* v. *Maroney,* 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]; *People* v. *Laursen,* 8 Cal.3d 192, 202 [104 Cal.Rptr. 425, 501 P.2d 1145]; *Mestas* v. *Superior Court,* 7 Cal.3d 537, 541 fn. 3 [102 Cal.Rptr. 729, 498 P.2d 977].) Miracle or defendant or others acting in their behalf could have returned to retrieve or remove the evidence; the television set could well have been stolen from the open truck had it been left there late at night and at that time obviously it was not convenient for the officers to remove the television set from the truck and take it to the station. The ultimate search of the bed of the truck was lawful inasmuch as it was conducted with the consent of both defendant and Miracle.

The judgment is affirmed.

Thompson, J., and Hanson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 13, 1974.