[No. C065324. Third Dist. July 25, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
DARLA ANN STILLWELL et al., Defendants and Appellants.

COUNSEL

Francine R. Tone, under appointment by the Court of Appeal, for Defendant and Appellant Robin Conley Briggs.

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant Darla Ann Stillwell.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROBIE, Acting P. J.**—This case involves several issues relating to the use of a drug sniffing dog.

During a traffic stop in downtown Marysville, officers of the Marysville Police Department used a narcotics detection dog to sniff the exterior of a pickup truck. This sniff led to the discovery of the makings of a methamphetamine lab in a backpack located in the bed of the pickup truck. Defendants Robin Conley Briggs and Darla Ann Stillwell (the driver and passenger of the pickup truck, respectively) were arrested. A search warrant was obtained and

served on defendants' residence where further evidence of a methamphetamine lab was discovered. Defendants Briggs and Stillwell were charged with methamphetamine lab and drug possession offenses arising from the traffic stop and search. Subsequently, defendants were charged with various drug and weapons possession charges stemming from an incident that occurred while the case related to the traffic stop was pending.

Defendant Stillwell filed a motion to suppress the evidence discovered as a result of the traffic stop and dog sniff. Defendant Briggs joined in the motion. The trial court denied the motion. Thereafter, defendants Stillwell and Briggs pled no contest to several of the charges in both cases, and several remaining charges and enhancements were dismissed.

On appeal, defendants contend the trial court erred in denying their suppression motion because (1) the prosecutor failed to prove the narcotics detection dog used to sniff the vehicle was reliable; (2) the alert of a narcotics detection dog standing alone did not establish probable cause for a warrantless search of the backpack in the bed of the pickup truck; and (3) the narcotics detection dog violated defendants' reasonable expectation of privacy when it sniffed inside the bed of the truck. Finding no merit in defendants' arguments, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 2009, at approximately 11:00 p.m., Officer Matthew Minton, a reserve officer for the Marysville Police Department, pulled over a small pickup truck because the license plate was obscured by the rear bumper and the license plate lamp was not functioning. Defendant Briggs was driving the truck and defendant Stillwell was seated on the passenger side. When Officer Minton spoke to Briggs, it appeared to the officer that Briggs's eyes were glassy and that he might be under the influence of a narcotic or driving while intoxicated. Officer Minton also recalled noticing that Briggs's pupils were fixed and not reacting. Officer Minton did not conduct an investigation for driving under the influence during this initial contact with Briggs.

Officer Minton returned to his patrol car with Briggs's license and radioed for assistance from Officer Christopher Miller. Officer Miller was more familiar with driving under the influence investigations and worked with a narcotics detection dog. About two minutes after the initial stop, Officer Miller arrived.

After Officer Miller arrived, Officer Minton asked Briggs to step out of the truck. Briggs was shown the problem with the truck's license plate. Officer Minton then told Briggs that he believed Briggs might be under the influence of narcotics or driving impaired and that he would be conducting an evaluation. Officer Minton asked Briggs to close his eyes for five to 10 seconds and then shined his flashlight at the side of Briggs's face. After doing this, Officer Minton asked Briggs to open his eyes, at which point Officer Minton evaluated Briggs's pupils.

Officer Minton asked Briggs if he was under the influence or had taken any narcotics. Briggs related that he had taken methadone earlier in the day. After learning this, Officer Minton did not feel it was necessary to conduct any further sobriety tests. Officer Minton asked Briggs if there was anything illegal in the truck and if he could take a look inside the truck. Briggs denied the officer's request. This, combined with Officer Minton's observations of Briggs, led him to suspect that Briggs might have a controlled substance or something illegal in the truck.

After Briggs rejected the request to search the truck, Officer Minton asked Officer Miller to have his dog check the exterior of the vehicle. Officer Miller and his dog Tommy had been working together since 2008. Tommy is a dual-purpose dog that serves to protect his handler and to detect narcotics. Tommy is trained to detect the odors of cocaine base, cocaine powder, methamphetamine, marijuana, and heroin. To obtain certification by the state Commission on Peace Officer Standards and Training (POST), a dog must be able to detect these odors. Tommy is certified annually to the POST standards. The certification process involves the hiding of different types of drugs in various weights in vehicles and buildings. To obtain certification, the dog must locate all of the required odors in both environments. Tommy has been certified every time he has been tested. At the time of the traffic stop, Tommy was up to date on his certifications. Officer Miller is trained and certified to handle Tommy and keeps a performance record for Tommy.

Officer Miller is "trained to read [Tommy], watch his behavior, how he reacts . . . ." When Tommy is sniffing the air around a vehicle, Officer Miller watches for any change in Tommy's behavior, such as a deviation from his standard high/low search pattern or the use of a "cone pattern" to work back to the source of the odor. Officer Miller's ability to read Tommy's behavior changes comes with hours of training. When Tommy locates the source of an odor, his "passive alert" is to sit and stare at the location where he found the controlled substance. This indicates to Officer Miller that Tommy smells the odor of one of the narcotics Tommy has been trained to detect.

Officer Minton requested that Officer Miller have Tommy sniff the air around the exterior of the truck; Officer Miller had Stillwell exit the vehicle. Officer Miller started the dog sniff at the front of the vehicle and moved back toward the rear of the truck. Tommy followed Officer Miller and was not on a leash. At the rear tire on the driver's side, Officer Miller noticed a change in Tommy's behavior. First, Tommy "snapp[ed]" back from circling around the truck and redirected his search by doubling back. Officer Miller kept walking around the truck, because he did not want to influence Tommy's decision to redirect the search. Tommy next used a "scent cone" search pattern, working right to left in an attempt to find the odor. Tommy then stood up on his hind legs with his front paws on the side of the truck and sniffed over the bed of the pickup. After sniffing the air in that area, Tommy immediately dropped down into his "sit/stare" alert. Tommy alerted to a black backpack in the bed of the truck. The backpack was the only item in the bed of the truck in that area and was the first thing Officer Miller saw when he went to take a look in the bed after Tommy alerted.

Based on Tommy's alert, Officer Miller opened the backpack to see what was inside. Inside the backpack, Officer Miller saw chemical bottles and a bottle with white pills. The items in the backpack were identified as a metal can of xylene, denatured alcohol, acetone, a 500 milliliter glass beaker, and a small gray bottle that contained several white pills. At the time, Officer Miller and Officer Minton believed these pills might be ephedrine. Based on his training and experience, Officer Miller identified these items as parts of a methamphetamine lab. After seeing these items, Officer Miller stopped looking through the backpack and did not "go hands on" with the evidence, pursuant to policy. Consequently, Officer Miller could not be certain if the backpack contained any of the narcotics Tommy was trained to detect, and he did not determine if the backpack did contain any of those items at a later date. At that point, Officer Miller told Officer Minton what he had found.

As a result of this discovery, Officer Minton contacted the Yuba/Sutter Narcotic Enforcement Team. Briggs and Stillwell were detained. Officer Minton placed Briggs and Stillwell under arrest for possession of items used in a methamphetamine lab. Officer Joshua Jellsey of the Yuba/Sutter Narcotic Enforcement Team arrived at the scene soon thereafter and recognized the items found in the backpack as commonly used to produce methamphetamine.

After viewing the items found in the backpack, Officer Jellsey obtained a search warrant for Briggs and Stillwell's residence. Inside the house, agents found a glass jar with a funnel on top and some red pills in the bottom of the

jar; a can of carburetor cleaner; a bottle of hydrogen peroxide; a clear jar containing a bilayered solution; blister packs from pseudoephedrine pills; a small hand-held torch; coffee filters with pink stains; a hot sauce bottle with an unknown substance inside; and a plastic cup with a pink slushlike substance inside. Several of the items were indicative of the manufacturing process for methamphetamine, and forensic testing on several of the items later showed the presence of ephedrine or pseudoephedrine. Ephedrine and pseudoephedrine are the most common starting materials used in the manufacture of methamphetamine, the only use for ephedrine or pseudoephedrine that was processed in the way indicated by the evidence found at the house would be for the manufacture of methamphetamine. A syringe filled with heroin was also discovered during the search of the residence. Officer Jellsey then conducted a further search of the pickup truck which revealed another pink-stained coffee filter in the bed of the truck and syringes concealed in the engine compartment of the truck.

At the hearing, defendants argued that "the search was without probable cause." They also challenged the length of their detention at the traffic stop as excessive. Acknowledging that a search warrant was issued based on the evidence discovered through the warrantless search of the truck, the trial court also recognized that "whether [the] search warrant is any good or not depends on whether or not I suppress this evidence."

In ruling, the trial court first found that the initial traffic stop was justified. Next, the court found that the detention was not prolonged because it was "clear that the dog alerting on the backpack occurred within ten minutes of the initial stop." Finally, the court found that defendants' rights were not violated, explaining as follows: "The Court is also somewhat troubled by the dog alerting on an item or items which don't fall within the four categories that the dog is trained to alert on. Because I don't have any testimony that there was any marijuana, methamphetamine, heroin or cocaine that was found within the backpack. There were clearly items found in the backpack that caused the officers to be concerned and believe they might be associated with a methamphetamine lab. [¶] And, Officer Miller, I'm just surprised that no attempt was made after the fact to see whether, in fact, any of those four items were in the backpack so that you could decide whether to give the dog a plus sign or a negative sign on that search. But that's—that really doesn't bear on the issue of that [sic] we're here for today, the suppression issue. The dog alerted on that item and I am not swayed at all that the search—that that alert became illegal or unconstitutional because the dog's nose happened to extend into the bed once the dog alerted. Once the dog gave the indication that Officer Miller was looking for, that was enough to create probable cause. And then the officer upon that probable cause because the vehicle is a vehicle and because it is mobile, the officer then has the right to take a look . . . ." Based on this reasoning, the trial court denied the motion to suppress.

After they entered their pleas, the trial court sentenced defendant Briggs to a prison term of 12 years and defendant Stillwell to a prison term of 10 years.

## DISCUSSION

### I

#### *Introduction*

Defendants contend that the prosecutor failed to establish that Tommy was a reliable narcotics detection dog at the hearing on the suppression motion, and therefore probable cause to search defendants' truck could not have existed. Because no evidence was presented to conclusively show that cocaine, methamphetamine, marijuana, or heroin was found as a result of Tommy's alert, defendants maintain that Tommy was not reliable, and the trial court erred in denying the suppression motion. Defendants also argue that a dog alert, standing alone, cannot provide probable cause to search a vehicle. Defendants suggest that a dog alert would provide only reasonable suspicion, and that a police officer would need more than just a dog alert to perform a warrantless vehicle search. Finally, defendants contend that Tommy invaded the vehicle by putting his front paws on the truck and sniffing above and inside the truck bed, thereby turning the dog sniff into an illegal Fourth Amendment search.

### II

#### *Standard of Review*

In ruling on a suppression motion, "the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] . . . [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, viz., the reasonableness of the challenged police conduct, is also subject to

independent review. [Citations.] The reason is plain: 'it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." ' " (*People v. Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)

III

*The Fourth Amendment and Dog Sniffs Generally*

■ "The Fourth Amendment provides '[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . .' (U.S. Const., 4th Amend.) This guarantee has been incorporated into the Fourteenth Amendment to the federal Constitution and is applicable to the states. [Citation.] A similar guarantee against unreasonable government searches is set forth in the state Constitution (Cal. Const., art. I, § 13) but, since voter approval of Proposition 8 in June 1982, state and federal claims relating to exclusion of evidence on grounds of unreasonable search and seizure are measured by the same standard. [Citations.] 'Our state Constitution thus forbids the courts to order the exclusion of evidence at trial as a remedy for an unreasonable search and seizure unless that remedy is required by the federal Constitution as interpreted by the United States Supreme Court.' " (*People v. Camacho* (2000) 23 Cal.4th 824, 829–830 [98 Cal.Rptr.2d 232, 3 P.3d 878].)

■ The United States Supreme Court has considered whether a dog sniff implicates the protections of the Fourth Amendment. In *United States v. Place* (1983) 462 U.S. 696 [77 L.Ed.2d 110, 103 S.Ct. 2637], the court concluded a sniff by a trained dog was sui generis and therefore not a search. (*Id.* at p. 707 [77 L.Ed.2d at p. 121].) The Supreme Court has also specifically held that "the use of a well-trained narcotics-detection dog—one that 'does not expose noncontraband items that otherwise would remain hidden from public view,' [citation]—during a lawful traffic stop, generally does not implicate legitimate privacy interests" and therefore does not violate the Fourth Amendment. (*Illinois v. Caballes* (2005) 543 U.S. 405, 409–410 [160 L.Ed.2d 842, 847–848, 125 S.Ct. 834].) Similarly, our Supreme Court has concluded defendants have no reasonable expectation of privacy in odors emanating from their concealed contraband that would preclude the use of a dog sniff to detect such odors. (*People v. Mayberry* (1982) 31 Cal.3d 335, 341–342 [182 Cal.Rptr. 617, 644 P.2d 810] [discussing dog sniffs in the context of airport luggage searches].)

As an initial matter then, it is clear that a well-trained detection dog's sniff of the exterior of a pickup truck does not amount to a "search" under the Fourth Amendment.

## IV

### *Reliability of This Narcotics Detection Dog*

Defendants first contend Tommy's alert on the backpack located in the bed of the pickup truck did not provide probable cause for a warrantless search of the backpack because the People did not prove Tommy was a "reliable" narcotics detection dog. The People disagree, arguing testimony at the suppression hearing showed Tommy was trained and certified, and the People "cannot be charged with an affirmative obligation to provide a specific record of a trained narcotics dog's accuracy." We find defendants' arguments unpersuasive.

Substantial evidence was adduced at the suppression hearing to support a finding that Tommy was well trained and, thus, reliable. Officer Miller testified he and Tommy had been working together since 2008 and Tommy is POST-certified annually. Officer Miller testified to the nature of the POST certification process Tommy was required to undergo. Tommy has certified every time he has been tested. At the time of the traffic stop, Tommy was up to date on his certifications. Officer Miller also testified he is trained and certified to handle Tommy.

Defendants' main argument is that, regardless of Tommy's training, Tommy is not reliable because no cocaine, marijuana, heroin, or methamphetamine was found in this case. We disagree. Officer Miller never received any lab results as to the contents of the backpack, and there was no evidence at the hearing as to the complete contents of the backpack. While it is thus true "[t]here was no evidence that the backpack contained contraband," that does not mean the backpack did *not* contain contraband. Therefore, no determination can be made as to Tommy's reliability based on his alert *in this case*.

More importantly, even if it were shown no cocaine, methamphetamine, marijuana, or heroin was found in the backpack *in this case*, substantial evidence would still exist to find Tommy reliable. Defendants offer no California authority for the proposition that evidence of a single error by an otherwise well-trained detection dog makes that dog unreliable. Instead, defendants rely on a single Florida case to support the notion that the People must present evidence of a dog's success rate to prove reliability. In that case, the court held that the state could not make a prima facie showing of probable cause based solely on testimony as to the training and certification of a narcotics detection dog. (*Matheson v. State* (Fla.Dist.Ct.App. 2003) 870 So.2d 8, 14–15.) *California* cases, however, have not required evidence of a dog's success rate to establish probable cause. (See *Estes v. Rowland* (1993) 14 Cal.App.4th 508, 529 [17 Cal.Rptr.2d 901]; *People v. Salih* (1985) 173

Cal.App.3d 1009, 1015 [219 Cal.Rptr. 603]; *People v. Bautista* (2004) 115 Cal.App.4th 229, 236–237 [8 Cal.Rptr.3d 862].) The appellate court's discussion in *People v. Bautista, supra*, 115 Cal.App.4th at page 229 is illustrative. In that case, the court found an agent's knowledge of a pair of detection dogs' training and experience and observation of the dogs' trained behavior gave probable cause for the issuance of a warrant. (*Id.* at pp. 236–237.)

Here, as in *Bautista*, Officer Miller was aware of Tommy's training and certification and he observed Tommy change his behavior and alert in a manner consistent with his training. Nothing more was required.

## V

### *The Dog Alert as Basis for Probable Cause*

██ Defendants next contend the alert of even a well-trained detection dog, standing alone, cannot establish probable cause for a search. Again, we disagree. Probable cause is established where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317].) Under California case law, "A dog alert can provide the probable cause needed for a search warrant." (*People v. Bautista, supra*, 115 Cal.App.4th at p. 236.) Here, Tommy alerted by performing a "sit/stare," per his training. The object he alerted to was a black backpack in the bed of the pickup truck. Because the backpack was in an automobile, the automobile exception to the warrant requirement applies, and the warrantless search of the backpack was not unconstitutional. (See *California v. Acevedo* (1991) 500 U.S. 565, 569 [114 L.Ed.2d 619, 627, 111 S.Ct. 1982].)

Defendants again cite to *Matheson*, this time for the proposition that an alert from a trained and certified drug detection dog can provide only mere suspicion that contraband is present, not probable cause for a search. (*Matheson v. State, supra*, 870 So.2d at p. 13.) California authority does not support the notion that more than an alert from a trained narcotics detection dog is needed to establish probable cause for a search.

## VI

### *Tommy's Sniff of the Pickup Truck's Bed*

Defendants finally contend Tommy exceeded the allowable scope of a dog sniff by placing his front paws on the pickup truck and sniffing over and

inside the bed of the truck, thereby transforming the sniff into a Fourth Amendment search. Not so.

In *U.S. v. Olivera-Mendez* (8th Cir. 2007) 484 F.3d 505, the drug detection dog "jumped and placed his front paws on the body of the car in several places during a walk-around sniff that took less than one minute." (*Id.* at p. 511.) The Eighth Circuit held that "[t]his minimal and incidental contact with the exterior of the car was not a tactile inspection of the automobile." (*Id.* at pp. 511–512.) Therefore, the sniff did not amount to a " 'constitutionally cognizable infringement.' " (*Id.* at p. 512.) Here, Tommy's action of standing up on his hind legs and putting his front paws on the side of the truck is almost identical to the behavior the Eighth Circuit found constitutional in *Olivera-Mendez*.

As for Tommy sniffing above and inside the truck bed, contrary to defendants' assertions, there is case law that holds this type of behavior constitutional. In *People v. Amick* (1973) 36 Cal.App.3d 140 [111 Cal.Rptr. 280], the Second Appellate District held that no reasonable expectation of privacy was violated when a police officer touched an item in the bed of a pickup truck that was covered by a blanket to confirm that the blanket covered a TV which had been reported stolen. (*Id.* at pp. 142, 143, 146.) If the officer's actions in that case did not amount to an infringement of constitutional rights, then certainly neither did Tommy's when he stuck his nose past the imaginary "plane" at the top of the truck bed to sniff the backpack. More importantly, the instinctive action of a dog jumping into an open part of a car it is sniffing (assuming that the police officer did not request that the owner of the vehicle open a door for this purpose) does not violate the Fourth Amendment. (*U.S. v. Stone* (10th Cir. 1989) 866 F.2d 359, 364.) A case from the Eighth Circuit parallels the situation in this case. In *U.S. v. Lyons* (8th Cir. 2007) 486 F.3d 367, a narcotics detection dog stuck his head into the open window of a van, an area where there surely *is* a reasonable expectation of privacy, unlike the open bed of a truck. (*Id.* at p. 370.) The court held that "[a]bsent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment. [Citations.]" (*Id.* at p. 373.) Here then, Tommy's instinctive actions of following the odor from the ground up to the source (even though these actions may have caused him to sniff in the bed of the truck) did not violate the Fourth Amendment.

For all of the foregoing reasons, we conclude the trial court did not err in denying defendants' motion to suppress.

## DISPOSITION

The judgment is affirmed.

Butz, J., and Duarte, J., concurred.

The petition of appellant Robin Conley Briggs for review by the Supreme Court was denied October 26, 2011, S196047.