Filed 2/25/14  P. v. Bester CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARK DUBLIN BESTER,<br><br>        Defendant and Appellant. | A137728<br><br>(San Francisco City & County<br>Super. Ct. No. 219045) |

**I.**

**INTRODUCTION**

Appellant Mark Dublin Bester appeals from his conviction for violating Penal Code section 25400, subdivision (a)(2)[1], possession of a concealed firearm, which resulted from his no contest plea to that charge.  The plea and conviction followed the denial of a motion to suppress evidence (§ 1538.5).  As he did below, appellant contends that the search of, and subsequent seizure of evidence from, his backpack was not justified as a search incident to arrest because no custodial arrest occurred, thus violating his Fourth Amendment rights.  We disagree and affirm.

**II.**

**FACTS AND PROCEDURAL HISTORY**

At about 7:20 p.m. on October 6, 2012, San Francisco Police Officer Broderick Elton and three other officers were on patrol near 245 Jefferson Street.  Officer Elton

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

smelled a strong odor of marijuana, and observed appellant standing in an alcove next to Joe's Crab Shack restaurant, holding what Officer Elton believed to be a marijuana cigarette in his mouth. Officer Elton testified that Jefferson Street is in the Fisherman's Wharf neighborhood, and to get into the public alcove where appellant was standing, the officers had to walk through a tight corridor approximately five- to six-feet wide. The doorway to Joe's Crab Shack was approximately six feet into the alcove. Once the officers were inside the alcove, Officer Elton saw that appellant was about to light the marijuana cigarette.

When appellant saw the police officers, he stated, "I haven't even lit it up. I have a medical marijuana card." In response, Officer Elton asked appellant to provide identification and the medical marijuana card. Appellant was not able to provide either of those documents. Officer Elton then told appellant he would need to be searched because "[appellant] was under arrest for the marijuana offense," and asked appellant to take off his backpack as well.

Appellant removed his backpack, and held it in front of himself. When appellant moved the backpack towards Officer Elton, Officer Elton smelled a stronger odor of marijuana. As Officer Elton placed his own hands on appellant's bag, appellant told the officer that he did not want him to search his bag, and that Officer Elton did not have a right to look into his backpack. Appellant then pulled the backpack towards himself, and Officer Elton grabbed the sides of the backpack, and ordered appellant to release it. At that time, Officer Elton felt a "weighted object inside the backpack, and it felt heavy." The object felt like a metal, small rectangular-type object which could be a handgun. Thus, Officer Elton feared that there was a weapon in appellant's bag, in addition to possible contraband.

Fearing a weapon or possible contraband inside appellant's bag, Officer Elton then pried appellant's hands off the backpack and ordered him to sit down by the ledge against the wall. While the other officers were standing with appellant, Officer Elton opened appellant's backpack and discovered a semi-automatic handgun with a gap in the handle, inside which Office Elton saw ammunition. Officer Elton alerted the other officers to the

gun's presence, and approached appellant to take him into custody. Appellant stood up, clenched his hands, put one leg forward, tucked his chin towards his chest, and looked left and right. Officer Elton described appellant's position as a "fighting stance," explaining that in his training and experience, such a stance is assumed by someone who is about to have a physical altercation.

After appellant assumed a fighting stance, two officers moved towards appellant and told him to turn around to be handcuffed. Appellant struggled in an effort to resist and escape the officers' grasp. Once the officers were able to turn appellant around and place handcuffs on him, appellant was more compliant. Throughout this struggle, Officer Elton told appellant multiple times that he was under arrest. After appellant was handcuffed, Officer Elton went through appellant's pockets to conduct a cursory search "to make sure [appellant] had no additional weapons or knives and, then, also contraband." In appellant's pockets, Officer Elton found four cellophane-type baggies containing a leafy substance that Officer Elton suspected to be marijuana. Officer Elton also found another small cellophane baggie containing suspected cocaine salt.

Appellant was charged by a criminal complaint filed by the San Francisco District Attorney's Office with one felony count of possession of a controlled substance with a firearm (§ 11370.1, subd. (a)), one felony count of possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)), a misdemeanor count of carrying a concealed firearm (§ 25400, subd. (a)(2)), a misdemeanor count of carrying a loaded firearm (§ 25850, subd. (a)), and a misdemeanor count of resisting arrest (§ 148, subd. (a)(1)).

A motion to suppress evidence under section 1538.5 was filed by appellant on October 17, 2012, and a written opposition thereafter was filed by the prosecutor. As he did in his written motion, appellant argued at the suppression hearing that because he possessed less than one ounce of marijuana, possession of that small amount (less than 28.5 grams) is only an infraction under Health and Safety Code section 11357, subdivision (b). For this reason, under section 853.5, Officer Elton "could not then arrest or search [appellant]." The prosecution responded that the United States Supreme Court has upheld and validated an arrest based solely upon an infraction.

3

Appellant's counsel also claimed that appellant's backpack was unlawfully searched because suspects cannot be searched for identification. The prosecution countered that not only was there was probable cause to arrest appellant, probable cause existed to search appellant for purposes of officer safety, given appellant's actions and the manner in which he was holding his backpack. The trial court denied appellant's motion to suppress.

After the denial of his motion to suppress, the trial court accepted appellant's plea of no contest to one count of violating section 25400 subdivision (a)(2), possession of a concealed firearm. The remainder of the charges were dismissed by the prosecutor. Appellant was sentenced to formal probation for three years with conditions. This appeal followed.

## III.

## DISCUSSION

### A. Standard of Review

In reviewing the ruling on a motion suppress evidence, the appellate court defers to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Hoyos* (2007) 41 Cal.4th 872, 891, overruled on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-643 (*Hoyos*).) The power to judge credibility, weigh evidence, and draw factual inferences is vested in the trial court. (*People v. James* (1977) 19 Cal.3d 99, 107.) However, in reviewing the reasonableness of the challenged police conduct, such as whether a search or seizure is reasonable under the Fourth Amendment, we exercise our independent judgment. (*Hoyos*, *supra*, 41 Cal.4th at p. 891.) " 'The reason is plain: "it is 'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' " ' [Citation.]" (*People v. Stillwell* (2011) 197 Cal.App.4th 996, 1004.)

### B. Denial of the Motion to Suppress

In arguing that the trial court erred when it denied his motion to suppress, appellant concedes that Officer Elton had probable cause to believe appellant had

violated Health and Safety Code section 11357, subdivision (b). Thus, appellant also does not challenge the legality of his detention. Instead, appellant disputes the legality of Office Elton's search of his backpack by claiming that Officer Elton did not make a valid custodial arrest of appellant prior to searching his backpack, because at most appellant was guilty only of an infraction under Health and Safety Code section 11357, subdivision (b). We disagree.

As respondent points out, *People v. McKay* (2002) 27 Cal.4th 601, 618 (*McKay*) clarified the rule that, "so long as the officer has probable cause to believe that an individual has committed a criminal offense, a custodial arrest—even one effected in violation of state arrest procedures—does not violate the Fourth Amendment." Like here, the defendant in *McKay* argued that an arrest for a fine-only offense, such as a traffic infraction, violated the Fourth Amendment prohibition on unreasonable seizures, and further, that his arrest for the infraction violated the federal Constitution. (*Id.* at p. 605.) The California Supreme Court rejected the defendant's argument, concluding that *Atwater v. Lago Vista* (2001) 532 U.S. 318 (*Atwater*) controlled, and resolved the issue adversely to the defendant. (*McKay*, *supra*, at p. 607.) The court explained: "Under *Atwater*, all that is needed to justify a custodial arrest is a showing of probable cause. 'If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.' [Citation.] We must therefore conclude that there is nothing inherently unconstitutional about effecting a custodial arrest for a fine-only offense. [Citation.]" (*Ibid.*)

Appellant here concedes that Officer Elton had probable cause to believe he (appellant) possessed some amount of marijuana. Based on the smell of marijuana, the unlit marijuana cigarette, and appellant's statements to the police, Officer Elton had probable cause to believe appellant was violating Health and Safety Code section 11357, subdivision (b), and thus Officer Elton had the authority to arrest appellant.

Thus, it is of no matter that Health and Safety Code section 11357, subdivision (b) is a fine-only offense, as the United States Supreme Court explicitly refused to make a

distinction between the arrest authority for "jailable" and "fine-only" offenses. (*Atwater*, *supra*, 532 U.S. at p. 348.) *Atwater* explained that drawing a bright-line between "jailable" and "fine-only" offenses to govern an officer's arrest authority is impracticable, because officers in the field frequently have neither the time nor competence to determine the severity of the offense for which they are considering arresting the person. (*Ibid*.) Moreover, as applied to this situation, most police officers do not carry a scale with which to weigh whether a suspect's possession of marijuana is a gram above, or a gram below, the fine-only line. (*Id.* at pp. 348-349.)

Upon Officer Elton's observation of appellant possessing marijuana, early on in his encounter with appellant, Officer Elton announced that appellant was "under arrest for the marijuana offense[.]" Because Officer Elton had probable cause to believe that appellant possessed marijuana, appellant's ensuing custodial arrest did not violate the Fourth Amendment, *even if* the marijuana possession was later discovered to be only an infraction.

Appellant relies heavily on *Knowles v. Iowa* (1998) 525 U.S. 113, 116 (*Knowles*), arguing that even if there was a valid arrest, neither of the two rationales justifying the "search incident to arrest" exception are present here: (1) the need to disarm the suspect in order to take the suspect into custody, nor (2) the need to preserve evidence for later use at trial.

To the contrary, the search of appellant's backpack occurred after the officer observed, and suspected, drug-related offenses. Once there was a valid arrest, the ensuing search incident to the arrest was lawful so long as Officer Elton felt a need to determine if appellant was armed. (*Knowles*, *supra*, 525 U.S. at p. 116.) *Knowles* stated that officer safety is a "legitimate and weighty" rationale to justify a search incident to arrest. (*Id.* at p. 117.) More recently, the United States Supreme Court affirmed the principle that, once a suspect is placed lawfully under arrest, the arresting officers are legally authorized to perform a search incident to the arrest "to ensure their safety during 'the extended exposure which follows the taking of a suspect into custody and

transporting him to the police station.' [Citation.]" (*Virginia v. Moore* (2008) 553 U.S. 164, 177.)

Here, the record fully supports a finding that Officer Elton's safety concerns led to the subsequent search of appellant's backpack. After announcing to appellant that he was under arrest for the marijuana offense, Officer Elton asked appellant to take off his backpack. Appellant then held the backpack in front of himself and began to pull it towards himself when Officer Elton grabbed the sides of the bag and felt a "weighted object inside the backpack, and it felt heavy." Officer Elton testified that he believed the metal, small rectangular-type object inside appellant's backpack was possibly a handgun. Additionally, appellant assumed a fighting stance, and Officer Elton believed that appellant was preparing for a physical altercation. Due to Officer Elton's concern that appellant had a weapon inside his backpack and that appellant was ready for a fight, Officer Elton was justified in conducting a search incident to appellant's custodial arrest.

We reject appellant's argument that any sort of touching is a search, and that Officer Elton performed a tactile search, or physical manipulation of the outside of the backpack, like the officers did in *Bond v. United States* (2000) 529 U.S. 334, 335 (*Bond*). In *Bond*, a border patrol agent squeezed all the luggage located in the overhead bins of a bus, and the Supreme Court found that physical manipulation of the luggage violated the Fourth Amendment as a physically invasive inspection. (*Id.* at pp. 335, 338.) *Bond* is inapplicable as the facts there were distinct: in that case the court considered the subjective and objective expectations of privacy of bus passengers in their luggage located in overhead bins, unique facts not remotely related to the circumstances here.

Officer Elton's actions here were consistent with the holdings in *Knowles,* and *Virginia v. Moore*, *supra*, 553 U.S. at page 178, which unequivocally held that, "[w]hen officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, *and to search the suspect in order to safeguard evidence and ensure their own safety.*" (*Ibid.*, italics added.)

## IV.

## DISPOSITION

The judgment is affirmed.

_____
RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
HUMES, J.