Filed 12/17/25  P. v. Harper CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CODY HARPER, Defendant and Appellant. | D084546 (Super. Ct. No. SCD302134) |

APPEAL from a judgment of the Superior Court of San Diego County, Evan P. Kirvin, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Daniel Rogers, Supervising Deputy Attorney General, Amanda Lloyd and Alana Cohen Butler, Deputy Attorneys General for Plaintiff and Respondent.

Following the denial of his motion to suppress evidence, Cody Harper was convicted by a jury of possession of fentanyl. The court granted one year of summary probation. Harper contends the court erroneously denied his motion to suppress evidence. Because the officer's slight moving of a blanket was a minimal intrusion in light of his concerns for officer safety and the need for a welfare check, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Initial Detention and Arrest

On January 29, 2024, at approximately 12:19 p.m., San Diego Police Officer Miguel Gonzalez was driving in his patrol car down an alleyway near a CVS store on Grand Avenue when he saw two people sleeping underneath blankets. This was an area known for loitering, and there were two "no loitering" signs posted on the CVS building in that alley. Officer Gonzalez stopped to contact the two individuals for loitering. As he got closer, he was able to see their faces, and he recognized the man as Harper and the woman next to him as B.R. Officer Gonzalez had encountered the two of them 20 or 30 times before. In the past he had arrested them together, and had cited both of them for possessing drug paraphernalia. Officer Gonzalez had previously contacted them in that same spot by the CVS and had told them to leave.

On this occasion Harper and B.R. were sleeping under a blanket. Officer Gonzalez woke them up to make sure they were okay. He said "hi" and asked what they were doing. Harper answered they were sleeping.

Officer Gonzalez believed Harper and B.R. looked "a little lethargic." He moved the blanket "a little bit" to make sure they were breathing and "everything was fine." He was concerned about these two individuals lying

2

on the concrete, who might be passed out due to substance abuse.  He had in the past pulled a blanket off someone or gone in a tent, and found someone dead of an overdose.  And as with every encounter, he was concerned about officer safety and what might be hidden under the blanket.

After he moved the blanket, Officer Gonzalez saw a black-and-green pouch between Harper and B.R.  Attached to the pouch with a key chain was a clear container with white pills inside.  The pills looked like Xanax or a counterfeit form of Xanax.  Officer Gonzalez asked the two individuals if they had a prescription for the pills.  B.R. said they were her anxiety pills and she did not have a prescription.  Harper said nothing.  Officer Gonzalez asked B.R. to hand the pouch to him.  There was a glass pipe inside the pouch that B.R. said was hers.

Officer Gonzalez detained both Harper and B.R. for possession of a controlled substance.  He asked both of them to get up.  They were slow to comply, and Officer Gonzalez pulled the blanket away further to prevent them from grabbing or reaching for anything.  Officer Gonzalez saw a little straw and burnt foil with residue on Harper's lap, and as Harper rose Officer Gonzalez saw a white powdery substance fall off Harper's lap.

Officer Gonzalez arrested Harper for possession of drug paraphernalia.  He searched Harper incident to arrest, and found, attached to Harper's pants with a key chain, a black pouch and a black plastic tube.  In the pouch were baggies containing a crystalline substance which turned out to be approximately 30 grams of methamphetamine.  The cylindrical tube contained approximately 35 blue pills, which turned out to be counterfeit pills that contained fentanyl.

Officer Gonzalez put Harper in his patrol vehicle and went back to search the area where Harper had been.  He found personal items in the

area, some under the blanket and some uncovered, all within reach of Harper at the time of his arrest. Officer Gonzalez found a black backpack containing a digital scale with white residue on it. He also found a cylindrical pipe which had a bulbous end with burnt residue on it.

### B. *Motion to Suppress Evidence and Evidentiary Hearing*

Harper moved pursuant to Penal Code section 1538.5 to suppress the glass bulbous pipe, all controlled substances, and the digital scale as the products of a warrantless search. The People argued in opposition that the container of white pills was in plain view, the officer had probable cause to arrest Harper based on the officer seeing the pill bottle lying equidistant from both Harper and B.R., and the officer thereafter executed a lawful search incident to arrest and found the remaining items.

At the evidentiary hearing, Officer Gonzlez testified that there was a blanket covering Harper, the pill bottle, and B.R. His police report did not contain this information. His report also did not mention his concern for officer safety or that he was conducting a welfare check on Harper and B.R. He confirmed that he only saw the pill container in plain view after he moved the blanket.

Officer Gonzalez also testified that if he found someone sleeping near a "no loitering sign," that was not enough, by itself, for him to issue a citation or arrest them for loitering. He would first have to ask them to leave. If they refused to leave, he would then contact the property owners and confirm the owners wanted the individuals to leave. He would again ask that the individuals to leave, and only if they refused could he issue a citation or arrest them for loitering. He had contacted the CVS store many times about transients in that alleyway, and the store never wanted transients there. Also, he had found Harper and B.R. "multiple times in the same spot" and

had told them to leave. But he did not check with CVS on this occasion; he presumed the store did not want Harper and B.R. there.

The court denied the motion to suppress. The trial court found Officer Gonzalez initially approached Harper and B.R. for loitering. The contact "evolved into a wellness check," arising from concern about two people sleeping outside a CVS in the middle of the day, and concern "that they were using drugs and potentially in distress," based on the officer's prior contacts with Harper and B.R. A need for officer safety arose as the officer approached two individuals covered by a blanket. The court found "there was nothing unlawful about that initial contact [or the officer's] slight move of the blanket for purposes of wellness check and officer safety."

Given the close proximity of those pills to each of the individuals, there was a reasonable suspicion at that point to detain both Harper and B.R., the court found, rejecting the argument that there was no reasonable suspicion as to Harper because B.R. immediately said the pills were hers, since the law allows for actual as well as constructive possession and the officer was not obligated to trust B.R.'s claim of ownership.

The court further found that, when Harper did not initially stand up when asked to do so, the officer further moved the blanket "because he's concerned that there may be additional items of controlled substance, paraphernalia, or unlawful substances that the defendant could conceal prior to standing up and complying." The officer thereafter saw the straw, the white residue, and a foil with burnt residue. The court concluded there was probable cause for the officer to arrest Harper for the constructive possession of the pills in the container and the drug paraphernalia in his lap. Once the officer arrested Harper, he had the lawful authority to search Harper and to search the backpack that was within Harper's reach.

5

II.

DISCUSSION

*A.  Standard of Review*

When reviewing a motion to suppress, we determine whether the trial court's factual findings, whether express or implied, are supported by substantial evidence.  (*People v. Camacho* (2003) 23 Cal.4th 824, 830 (*Camacho*).)  If there is substantial evidence, " ' "no matter how slight it may appear in comparison with the contradictory evidence," ' " the judgment shall be affirmed.  (*People v. Johnson & Johnson* (2022) 77 Cal.App.5th 295, 329.)  We defer to the trial court and make all reasonable inferences that favor the affirmance.  (*In re White* (2018) 21 Cal.App.5th 18, 29.)  For questions of law, such as whether the search was reasonable, we exercise our independent judgment.  (*Camacho, supra,* 23 Cal.4th at p. 830.)

*B.  The trial court properly denied the suppression motion.*

The Fourth Amendment protects individuals from unreasonable searches and seizures.  (U.S. Const., 4th Amend.)  Courts interpret the amendment to impose constraints on the conduct of law enforcement officers that may significantly intrude upon privacy interests.  (*Illinois v. McArthur* (2001) 531 U.S. 326, 330.)  When reviewing a warrantless search, the court balances the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable.  (*Id.* at p. 331).  Where an individual has a diminished expectation of privacy or the intrusion was minimal, a warrantless search may not be unreasonable.  (*Id.* at p. 330.)

Harper contends that when Officer Gonzalez moved the blanket covering Harper and B.R., this constituted a search under *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*) and was impermissible absent reasonable suspicion that Haper had committed a crime and was armed and dangerous.  The

People counter that the minimal contact that occurred here did not amount to a *Terry* stop and frisk, and that the officer's movement of the blanket to better see Harper and B.R. was appropriate in the interests of officer safety and as a welfare check.

We agree with the People. First, we defer, as we must, to findings by the trial court, which had the opportunity to assess Officer Gonzalez's credibility. The trial court found that Officer Gonzalez's initial contact for loitering "evolved" into a wellness check, and implicitly credited Officer Gonzalez's testimony that the purpose of his moving the blanket was to conduct a wellness check and for officer safety.

Substantial evidence supports these findings. Officer Gonzalez testified he was driving just after noon in his patrol car when he stopped to contact two individuals sleeping in the alleyway in an area known for loitering. Harper and B.R. were sleeping outdoors in the middle of the day outside a CVS store, they looked lethargic to him, and Officer Gonzalez knew that they used controlled substances, based on his having previously cited them for drug-related offenses. He testified they might be passed out due to substance abuse, or dead of a drug overdose. As he approached Harper and B.R., Officer Gonzalez was wary of what could be hidden under their blanket. While Harper and B.R. had always been calm and cooperative with him, regardless of how many times he had contacted a person, each encounter is unpredictable, the officer explained, and he has to always think about officer safety. He knew transients may carry knives or blades.

In view of these legitimate law-enforcement concerns, the extent of the intrusion was minimal. Officer Gonzalez moved the blanket "a little bit," enough "to see them a little bit clearer, where they were, make sure they were okay." Officer Gonzalez did not touch Harper's body, either over or

7

under the blanket, and he did not move the blanket entirely off Harper in this initial encounter.[1]  He evidently could not see what was on Harper's lap.

Both the welfare check and officer safety findings were supported by substantial evidence, and on our independent review, the minimal intrusion in light of the officer's legitimate law enforcement[2] and community caretaking[3] concerns did not render the movement of the blanket an unreasonable search in violation of Harper's Fourth Amendment rights.  (See *United States v. Knights* (2001) 534 U.S. 112, 118–119 ["The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' "]; see also, eg, *People v. Amick* (1973) 36 Cal.App.3d 140, 146 [defendants had no reasonable expectation of privacy as to a stolen television set on the open bed of a truck being driven around the public streets even though a blanket was thrown over it, and officer's act of touching the object through the slats of the

---

[1]    Compare *Terry*, 392 U.S. at p. 16 (describing a frisk as "a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons . . .")

[2]    *Maryland v. Wilson* (1997) 519 U.S. 408, 412 [public interest in officer safety is " 'both legitimate and weighty' "].

[3]    "[A] significant portion of police work is devoted to community caretaking functions, where no criminal misconduct is under investigation." (*People v. Madrid* (2008) 168 Cal.App.4th 1050, 1052−1053.)  "The need to render emergency aid is a well-recognized part of the exigent circumstances exception," which must be supported by a reasonable belief that an emergency exists.  (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1048.)

truck was "of a most limited nature conducted with only minimal intrusion of privacy"].)

Once the officer moved the blanket and spotted the pill container, we agree with the trial court that there was reasonable to suspicion to detain both Harper and B.R. The items that dropped out of Harper's lap as he was being detained provided probable cause to arrest him, and the remaining searches of Harper's person and his belongings fell under the exception to the warrant requirement for searches incident to arrest. (See *People v. Edwards* (1969) 71 Cal.2d 1096, 1106–1107 [the permissible scope of a search incident to an arrest is the arrestee's person and the area within his immediate control, meaning the area in which he might gain possession of a weapon or destructible evidence].)

We affirm the trial court's denial of Harper's motion to suppress.[4]

---

[4] Respondent urges us to affirm on the basis that Harper lacked a reasonable expectation of privacy and thus lacked standing to bring a Fourth Amendment challenge, though acknowledges that the People's failure to raise this argument below would ordinarily forfeit it on appeal. Harper failed to file a reply brief, so we do not have his position on forfeiture nor on whether he would have developed the record differently on the question of Fourth Amendment standing had it been raised below. In light of our conclusion, we need not reach this issue.

## III.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

DO, J.

KELETY, J.